UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 11-124-JBC**

**COGENT SOLUTIONS GROUP, LLC**                                **PLAINTIFF**

**V.**                    <u>**MEMORANDUM OPINION & ORDER**</u>

**HYALOGIC, LLC, ET AL.**                                        **DEFENDANTS.**

\* \* \* \* \* \* \* \* \*

Cogent Solutions Group, LLC ("CSG") and Hyalogic, LLC are competitors in the joint supplement market, with hyaluronic acid ("HA") being a key component in their respective products. In April 2011, CSG commenced suit against Hyalogic and Hoppy & Company, Inc. requesting the defendants to cease the dissemination of misleading information about CSG's product Baxyl, primarily focusing on the defendants' use of a "Competitive Analysis Chart" comparing the two competing products. On April 21, 2011, the parties entered into a Stipulated Agreement (R. 19, attach. 1) informing the court of their intent to mediate in good faith, and the defendants agreed to "remove all copies of 'the Chart' from circulation, and all copies, whether paper or electronic, shall be retained by counsel."

The parties conducted a settlement conference on April 29, 2011, before Magistrate Judge Wier and resolved all claims. R. 23. According to the written Settlement Agreement, Release, and Covenant Not to Sue tendered to the Court (R. 47 Sealed Settlement Agreement), the parties agreed to specific prohibitions, such as an agreement to refrain from making "false or misleading statements about

1

the other [p]arty's products," an agreement to refrain from utilizing a "Competitive Analysis Chart" in future marketing or sales, and an agreement that Hyalogic would not state that Baxyl contains preservatives that break down hyaluronan. R.47 at 4-5. Thereafter, the parties tendered an agreed order of dismissal which was signed and entered on June 13, 2011.

Currently pending is a motion by CSG to enforce the Settlement Agreement (R.30), arguing that Hyalogic has violated this agreement, to the detriment of CSG and its product "Baxyl[1]," through the marketing of Hyalogic's own product, "Synthovial 7[2]," and the dissemination of false and misleading information. Although federal courts generally do not retain jurisdiction to enforce settlement agreements, *see Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 381-82 (1994), here an "independent basis" for jurisdiction exists based on diversity of citizenship and a stipulated amount in controversy exceeding $75,000. *See* R. 49. For the following reasons, the court will deny CSG's motion to enforce the settlement agreement. In reaching that conclusion, the court has found it necessary to utilize all responses, replies, and surreplies filed by the parties, and will thus grant all motions to file such pleadings (R. 39, 40, 42, 43, 44, and 45).

CSG's pending claims of breach of the Settlement Agreement stem from statements on a June 2011 YouTube video entitled "Pure Hyaluronic Acid – Anti Aging.3gp," a speech given by Dr. Karen Brown on July 30, 2011, at the Natural

---

[1] Baxyl is an "oral, liquid HA supplement that is sold into the human natural products market." *See* R. 30, Exhibit 2 at 3.
[2] "Synthovial 7" is a "patented, human orally-digestible liquid hyaluronic acid ("HA") supplement," introduced in 2001 to address joint pain. *See* R.36 at 3.

Products Association Midwest Trade Show, and an allegation that Hyalogic did not timely remove the Competitive Analysis Chart from circulation, despite having agreed to do so in April 2011. Two provisions of the Settlement Agreement apply to CSG's claims of breach: section 3.0 "Representations" and section 8.0 "Liquidated Damages." CSG has failed to prove breach under either section.

### I. Section 8.0 (Liquidated Damages)

This portion of the Settlement Agreement states that the parties agree:

"if it is ever proven, by clear and convincing evidence, that Hyalogic and/or the Hoppy Entities, including their respective employees and agents, knowingly used any of the following statements:

  a. that Baxyl is not bio-available;

  b. that Baxyl is not capable of sublingual absorption;

  c. that Baxyl may have a pro-inflammatory effect in the human body;

  d. that the human body can only absorb 3 mg of HA or that the joints only need 3 mg of HA per day.

in print for sales and/or marketing purposes after May 17, 2011, then the offending party shall be liable to CSG in the amount of $5,000 per use, as liquidated damages."

A settlement agreement is a contract and controlled by Kentucky contract law and rules of contract interpretation. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003); *3D Enter. Contracting Corp v. Louisville and Jefferson County Metro Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties." *Cantrell Supply Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). "The interpretation of a contract, including the

determination of whether a contract is ambiguous, is a question of law for the court[.]" *Id.*

Here, the terms of the Settlement Agreement are clear and unambiguous. The parties specifically agreed that in order to trigger this liquidated damages clause, six requirements must be proven: (1) by clear and convincing evidence, (2) that Hyalogic, (3) knowingly used the statement, (4) in print, (5) for sales or marketing purposes, (6) after May 17, 2011. CSG's allegations of breach do not meet these strict requirements.

CSG claims that Hyalogic is in breach due to the statement on the YouTube video that "you only need . . .3 milligrams of high molecular weight . . ." (R. 30 at 4). Although this statement reads very closely to the prohibition listed in subsection d of the 8.0 liquidated damages clause that reads "the human body can only absorb 3 mg of HA or that the joints only need 3 mg of HA per day," CSG fails to prove breach because it cannot meet all of the six requirements in order to trigger this damages clause of the Settlement Agreement.

CSG cannot meet the high threshold of clear and convincing evidence to show that Hyalogic was responsible for posting the YouTube video. Hyalogic contends that the video was posted by an unrelated Malaysian company that was "acting independently" and uploaded the YouTube video to the Internet "without permission." (R. 36 at 8). CSG argues that Hyalogic's website provides contact information for many international retail partners, including partners located in Malaysia. *See* R.38 at 5, FN 9 (citation omitted). This listing of "retail partners"

4

referencing companies in Malaysia on Hyalogic's website merely supports a weak inference; it does not prove by clear and convincing evidence that Hyalogic caused the YouTube video to be uploaded to the Internet when the affidavit of Landis directly refutes this assertion. Landis states, "Hyalogic did not cause that video to be posted on YouTube – it was posted, without permission, by [a] user with the screen name "purewhiteclean," operated by a Malaysian company which sells Hyalogic's products (the company is otherwise unrelated to Hyalogic)." (R.35-1 at 3, ¶5) CSG offers no evidence, other than its own speculation, to show that this company is related to Hyalogic.

In addition, CSG has not demonstrated that this verbal statement on the YouTube video satisfies the requirement that an offending statement must be "in print." In construing the contract as a whole, noticeably absent from the plain language of this clause is the term "Internet." Section 3.3 of the Settlement Agreement states that Hyalogic agrees to remove the "competitor line" from the graph on any future use "in print or on the Internet." It is a "fundamental and supreme rule of construction of contracts [that], the intention of the parties governs." *Parrish v. Newbury*, 279 S.W.2d 229, 233 (Ky. 1955). The parties specifically included the term "Internet" following the term "in print" in one section of the contract, 3.3, but omitted it in another, 8.0. Therefore, this intentional omission in section 8.0 specifically excludes statements on the Internet, or in this case the verbal statement by Dr. Brown on the YouTube video, as offered by CSG to trigger this damages section.

Finally, CSG has not shown that this verbal statement referencing 3 milligrams was used for "sales or marketing purposes after May 17, 2011." Darren Landis, a founding member of Hyalogic, by sworn affidavit testifies that "[t]he two videos described in Cogent's Motion to Enforce Settlement Agreement were originally loaded onto Hyalogic's website in June 2010. Hyalogic did not make any changes or additions to the content of the videos after the settlement." (R. 37 at 3). CSG does not address Landis's sworn statement or offer any evidence to refute the existence of the YouTube video in the public domain prior to May 17, 2011. Because CSG cannot demonstrate by clear and convincing evidence, as required to trigger section 8.0 of the Settlement Agreement, that the statement by Dr. Brown on the YouTube video was made by Hyalogic and was used "in print" for sales or marketing purposes after May 17, 2011, this claim for breach must fail.

This allegation of breach relating to 3 milligrams on the YouTube video is the only one of CSG's allegations that could be construed to trigger this liquidated damages clause of section 8.0 of the Settlement Agreement. The general claims attributed to Dr. Brown at the keynote address referencing "citric acid and potassium sorbate as preservatives that breakdown HA" are not among the prohibitions listed in (a)-(d) which are intended to trigger 8.0. Moreover, the removal of the Competitive Analysis Chart from circulation does not trigger this section, nor do the parties allege that it does.

**II.     Section 3.0 (Representations)**

CSG's remaining allegations of breach relating to other statements on the YouTube video, Dr. Brown's keynote address, and the timeliness of removal of the Competitive Analysis Chart can all be analyzed under Section 3.0 of the Settlement Agreement, which provides:

"3.2   The Parties expressly warrant, represent, and agree that they will not make false or misleading statements about the other Party's products.

3.3   Hyalogic and Hoppy shall not utilize the "Competitive Analysis" Chart (the "Chart") or the characterization about Baxyl contained in the Chart in any future marketing and/or sales materials or information.  Hyalogic will use its best efforts to retrieve and destroy all existing copies of the Chart.  Hyalogic further agrees to remove the "competitor line" from the graph on any future use in print or on the Internet with regard to any preservative-related graphs.

3.4.   Hyalogic agrees that it will not state, nor cause others to state, that Baxyl contains preservatives that break-down hyaluronan ("HA").

CSG argues that two other statements on the YouTube video are in breach of the Settlement Agreement.  The statement on the YouTube video that Hyalogic's product, Synthovial 7, is "more than 6 times that of the competition," while the "screen depicts that Hyalogic's products have '6X Higher Weight'" (R.30 at 5) does not rise to the level of breach.  Contrary to CSG's assertion, this statement is not in violation of Section 3.2 prohibiting "false or misleading statements" about the other's product.  Landis, in his sworn statement, states that "[t]o my knowledge, there are at least 13 other liquid HA supplements on the market that compete directly with Synthovial 7 and Baxyl.  Including other product lines, there are more than 30 competing HA products in the marketplace."  (R.30-1 at 2, ¶9)  The plain language of Section 3.2 requires a reference to the "other

7

Party's products." "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Frear*, 103 S.W.3d at 106 (citing *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). The general reference to "the competition" on the YouTube video is not an explicit reference to CSG's product Baxyl. Enforcing the agreement strictly, then, these statements do not constitute breach.

In addition, CSG cites another statement on the YouTube video where Hyalogic claims that "[w]hile others use preservatives and fillers that break down HA in their product, Hyalogic does not use any preservatives or fillers in order to retain the integrity and effectiveness . . ." (R. 30 at 5). Section 3.4 prohibits Hyalogic from stating or causing others to state that "Baxyl contains preservatives that break-down hyaluronan ("HA")." CSG again asks the court to make the assumption that the statement on the video referencing "others" must be a reference to CSG's product Baxyl. The court will not do so when the contract, enforced strictly, requires an express representation about Baxyl. *See Frear*, 103 S.W.3d at 106.

CSG raises another breach allegation regarding Hyalogic's "characterization about Baxyl contained in the Chart in marketing and/or sales." (R. 38 at 4). Hyalogic agreed to refrain from using the "Competitive Analysis Chart" or the characterization about Baxyl contained in the Chart in future marketing or sales as memorialized by Section 3.3 of the Settlement Agreement. However, this section also states that "Hyalogic will use its best efforts to retrieve and destroy all

8

existing copies of the Chart." CSG appears to complain that Hyalogic did not remove the Competitive Analysis Chart quickly enough from circulation from the time of the negotiation of the settlement in late April 2011 to the date the Settlement Agreement was actually signed in May 2011. (R.38 at 4-5).

The Settlement Agreement does not address the timing of the removal of the Competitive Analysis Chart from circulation. Rather, the contract says Hyalogic will use its "best efforts." Hyalogic states that all copies of the Competitive Analysis Chart were removed from circulation in April 2011. (*See* R.39-1 at 8). Under Kentucky law, to satisfy the elements of a breach of contract claim the complainant must establish (1) the existence of a valid contract; (2) breach by the defendant; and (3) damage resulting from the breach. *Sudamax Industria e Comercia de Cigarres, Ltda. v. Buttes*, 516 F.Supp.2d 841, 845 (W.D. Ky. 2007); *Metro Louisville/Jefferson County Gov. v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009). Even if Hyalogic did not use its "best efforts," CSG has not identified a single instance where Hyalogic used the Competitive Analysis Chart post-settlement. Therefore CSG cannot show breach or damages resulting from breach regarding Hyalogic's "best efforts" to remove the Competitive Analysis Chart from circulation.

Finally, CSG argues that statements made by Dr. Brown are in violation of Section 3.0. The statement that "you only need . . .3 milligrams," discussed earlier in reference to Section 8.0, can also be analyzed under Section 3.0. Even assuming this statement is "false or misleading," so as to to trigger Section 3.2, it

is not an explicit reference to the "other party's product" as required by this section, and thus does not amount to breach. Again, the reference can hardly be explicit when there are potentially thirteen other products in this market. *See* Landis Affidavit (R.30-1 at 2, ¶9).

CSG does not allege which sections of the Settlement Agreement Dr. Brown breached in giving her keynote address, but rather makes general allegations that her speech was "false and misleading." (R. 30 at 7). CSG appears to complain about statements she made while describing "competitors" that "use citric acid and/or potassium sorbate as preservatives." *Id.* Section 3.4 prohibits Hyalogic from stating that "Baxyl contains preservatives that break-down hyaluronan ("HA")." Again, Brown's reference to "competitors" will not be construed as a direct reference to Baxyl, under strict construction of the Agreement. *See Frear*, *supra*. The plain language of the contract requires an express reference to Baxyl in order to breach this Section.

CSG argues that "it is clear that Hyalogic is referring to CSG" because "only 3 products contain trace amount of citric acid and potassium sorbate as preservatives, and two of these three products are products marketed and sold by CSG." However, Landis in his sworn statement directly refutes this claim. Landis states, "Hyalogic understands Dr. Brown's statement that citric acid and potassium sorbate break down HA is a true statement based upon her research. Not including Baxyl, Hyalogic is aware of at least nine human liquid HA supplements that list citric acid and potassium sorbate among their ingredients." R. 35-1 at 5, ¶28.

Even if the statements by Landis are not true, it is not clear that Dr. Brown is referring to CSG or Baxyl because she never does so. Because the contract and plain language require a specific reference to Baxyl, this statement does not constitute breach of the Settlement Agreement.

### III. Remaining Pending Issues

Hyalogic states that CSG has "directly and aggressively attacked Hyalogic and Hyalogic's products in public advertising and in direct marketing to Hyalogic's customers" and is considering bringing claims against CSG for these actions. R.36 at 2-3. However, because these allegations are not presented as cross-claims or a motion, there is nothing for the court to address.

Although CSG does not support the request, it also requests "an order restraining and enjoining Hyalogic from disseminating the Hyalogic Falsities" at the end of its brief. R. 30 at 8. If this were a motion for a preliminary injunction, the court would consider and balance the following factors: (1) the likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction on the public interest. *Déjà vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). As discussed, the court finds that CSG is not entitled to recovery on its breach of contract claims. Because CSG has not shown the likelihood of success on the merits or any irreparable harm or imbalance of equities, it is not entitled to a preliminary injunction.

Accordingly,

**IT IS ORDERED** that CSG's motion to enforce settlement agreement (R. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions (R. 39, 40, 42, 43, 44, 45) are **GRANTED** and all accompanying briefs and affidavits are admitted as part of the record.

This case shall continue to remain **CLOSED** and **STRICKEN** from the court's active docket.

Signed on March 30, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY